UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10482

ARISTIDES CARDOSO,

v.

CITY OF BROCKTON, LINDA M. BALZOTTI, CHIEF OF POLICE
EMANUEL GOMES, OFFICER ROBERT GRAYSON, AND POLICE
LIEUTENANT CHRISTOPHER LA FRANCE

November 25, 2014

MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

STEARNS, D.J.

Aristides Cardoso, proceeding *pro se*, filed this blunderbuss 82-page, 16-count Amended Complaint against the City of Brockton, its Mayor, its Chief of Police, and a patrol officer claiming that a municipal custom of "engag[ing] in a pattern or practice of subjecting Cape Verdeans and African Americans to excessive force, false charges or arrest, and improper searches and seizures" caused his false arrest by defendant Robert Grayson incident to a traffic stop on March 1, 2010.[1] Compl. ¶ 1; Pl. Mem. at 1-2. More specifically, Cardoso (who is of Cape Verdean descent) alleges that Grayson arrested him in retaliation for

---

[1] While Cardoso in the original Complaint named as putative defendants Vincent Bowman, William Willis, Thomas Hyland, Brian Donahue, and Michael Powers, they were never served.

his filing a similar complaint against another Brockton police officer.² As against Grayson in his personal capacity,³ the Amended Complaint alleges: violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, 42 U.S.C. § 1983 (Count II); violations of the State Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I, by way of threats, intimidation and coercion

---

² Cardoso's Section 1983 claims against former Mayor Balzotti, Chief Gomes, Lieutenant La France, and the City of Brockton are derivative of the claim against officer Grayson, that is, they "have tolerated this conduct through their failure to supervise, train, investigate, and discipline police officers adequately." Compl. ¶ 1. As is the court's practice, it will bifurcate these claims from underlying claim and, if necessary, take them up in the context of a judgment. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) (verdict in favor of defendant officer on plaintiff's excessive force claim precluded liability on the part of his supervisors and employer).

³ The Amended Complaint also names Lieutenant Christopher LaFrance. As best as can be determined from the pleadings, LaFrance was the supervising officer at the station where Cardoso was booked. A supervisory official cannot be held vicariously liable under section 1983 on a theory of *respondeat superior*. See *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor, in other words, can be held liable "only on the basis of her own acts or omissions," *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1st Cir. 1989), properly pled together with the requisite state of mind. This means that when a plaintiff alleges "invidious discrimination," he "must plead and prove that the defendant acted with discriminatory purpose." *Ashcroft v. Iqbal, supra*, at 676. *See also Clancy v. McCabe*, 441 Mass. 311 (2004) (comprehensive review of the doctrine). Because nothing of the sort is plead with respect to LaFrance, he will be dismissed from the lawsuit.

violative of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments (Count VI); conspiring to violate the State Civil Rights Act (Count VII); negligent infliction of emotional distress (Count VIII); intentional infliction of emotional distress (Count IX ); malicious prosecution (Count XII); abuse of process (Count XIII); retaliation (Count XIV); defamation, slander, libel, and injurious falsehood (Count XV); negligence (Count XVI).[4]

Discovery deadlines have expired and Grayson and Cardoso now cross move for summary judgment on all counts of the Amended Complaint.

BACKGROUND

The facts, as best the court can discern them, are as follows.[5] On March 1, 2010, while driving in Brockton, Cardoso was observed by Officer Grayson to fail to heed a stop sign at the corner of Spring and Ash streets. Grayson also noted a broken brake light on Cardoso's vehicle.[6] Grayson signaled for Cardoso

---

[4] There are also "counts" denominated as XXXIII through XXXIX, but these appear to be pleading statements carried over from the original Complaint and not attempts to plead additional causes of action.

[5] The court relies on Cardoso and defendants' Statements of Undisputed (or disputed) facts (which is limited to the circumstances surrounding the March 1, 2010 stop), the factual allegations of the Amended Complaint, attachments to the original Complaint, and both Grayson's and Cardoso's affidavits.

[6] These are both civil infractions under Massachusetts motor vehicle law. Civil traffic infractions are motor vehicle violations carrying fines not exceeding one hundred dollars for the first offense and no penalty of

to stop intending to issue him a citation for the failure to stop and to inform him of the malfunctioning brake light. According to Grayson, as he was writing the citation, Cardoso became belligerent, accusing him of being a racist with an animus towards Cape Verdeans. Grayson states that Cardoso's increasingly obstreperous behavior was attracting the attention of passing motorists, thus impeding the flow of traffic. Grayson ultimately arrested Cardoso for disorderly conduct. Lieutenant LaFrance was the "Approving Officer" who read Cardoso his Miranda rights at the Brockton police station. Compl. - Ex. A at 4.

Cardoso's version of the arrest differs dramatically. Cardoso states that he "did not run the stop sign" and that "[w]hen Officer Grayson returned from the police cruiser [he] told [Cardoso] to get out of the car" and arrested him immediately. Cardoso Aff. ¶¶ 19-22. According to Cardoso, Grayson informed him "that he was under arrest because [he had] filed a Complaint against Officer Stanley David." *Id.* ¶ 20. Cardoso states that he was booked at 12:44 p.m. and "held at the police station for more than six hours." *Id.* ¶¶ 28-29. Cardoso afterwards moved from Brockton because "he is frightened that [he] will be shot and killed by [the] Brockton Police . . . ." *Id.* ¶¶ 32-33. He claims to suffer "post-traumatic stress" as a result of the arrest, manifested by "anxiety

---

imprisonment. *See generally* Mass. Gen. Laws. ch. 90C § 3, and the Uniform Rule on Civil Motor Vehicle Infractions.

and depression, nightmares, headaches, and nausea." *Id*. ¶ 37.

DISCUSSION

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Id.*, quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008). To defeat a motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 317 (1st Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).[7] Under Local Rule 56.1, "[m]otions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends that there is no genuine issue to be tried, with page references to affidavits, depositions

---

[7] Grayson's initial argument that Cardoso's Complaint is time-barred – the incident having occurred "on March 1, 2014 [sic], and that Cardoso filed this matter on March 4, 2013," Defs. Mem. at 4, is a nonstarter. The court's docket reflects that Cardoso field the original Complaint on March 1, 2013, just within the applicable three-year statute of limitations. See Compl. - Dkt. #1.

and other documentation."[8]

Let me turn first to Count II, which alleges violations of the Federal Civil Rights Act. State and local police officers who commit constitutional torts while acting "under color of state law" may be sued for money damages under 42 U.S.C. § 1983. The only plausible allegation of a constitutional violation set out in the Amended Complaint, as supplemented by Cardoso's Statement of Facts, is his arrest by Grayson allegedly without probable cause in violation of the Fourth Amendment.[9] *Street v. Surdyka*, 492 F.2d 368, 372-373 (4th Cir. 1974) ("There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause."). A probable cause analysis entails "'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the

---

[8] Cardoso's Statements of Material Facts (both in support of his motion for summary judgment and in opposition to defendants' dispositive motion) addresses only the circumstances of the disputed traffic stop and Cardoso's speculation as to Grayson's motive for making the arrest.

[9] There are no plausible allegations of any excessive use of force by Grayson or attempts on his part to suppress Cardoso's exercise of his right of free speech. (The Eighth Amendment, by its own terms, applies only to convicted prisoners). The allegations of Counts VIII and IX, common-law negligent and intentional infliction of emotional distress, are more properly seen as subsumed in any damages component of Cardoso's section 1983 claim. The common-law negligence claim, Count XVI, is duplicative of Count VIII and will be dismissed for that reason. The free-standing claim for retaliation (Count XIV) does not exist at common law and will be dismissed as well.

time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-471 (1985), quoting *Scott v. United States*, 436 U.S. 128, 136 (1978). "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck v. Ohio*, 379 U.S. 89, 96 (1964), quoting *Carroll v. U.S.*, 267 U.S. 132, 162 (1925). "The only relevant facts are those known [or imputed] to the officer. When these facts are in reasonable dispute, the fact-finder must resolve the dispute. . . . However, when the underlying facts claimed to support probable cause are not in dispute, whether those 'raw facts' constitute probable cause is an issue of law . . . ." *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009) (internal citation omitted); *see also Ornelas v. United States*, 517 U.S. 690, 696-697 (1996). Here, because the underlying facts surrounding the arrest are in dispute, the resolution of the issue must be submitted in the first instance to the jury as the finder-of-fact.[10]

---

[10] Resolution of this issue may also determine Count XII, the claim for malicious prosecution against Grayson. The tort of malicious prosecution requires proof that (1) a legal proceeding was brought by the defendant, (2) commenced maliciously, (3) without probable cause, and (4) terminated in the plaintiff's favor. *Sklar v. Beth Israel Deaconess Med. Ctr.*, 59 Mass. App. Ct. 550, 557 (2003); *see also O'Connell v. Bank of Boston*, 37 Mass. App. Ct. 416, 420 (1994) ("It is not enough that the accused be found not guilty; to recover damages he must also prove that his accuser acted from malice, i.e., from

The State Civil Rights Act claim (Count VII) stands, however, on a different footing than the Federal Act as it contains two additional elements: (1) "by means of threats, intimidation, or coercion," and (2) (because it is plead as a conspiracy) a tortious agreement. The only coercive act plead is the arrest itself, which, even if mistaken in its premise, is a privileged act on the part of a commissioned police officer, and by definition cannot by itself constitute a civil rights violation. *Cf. Commonwealth v. Moreira*, 388 Mass. 596, 601 (1983).

---

improper motives; and his accuser must have lacked probable cause for his charges."). The parties do not brief or adequately explain the disposition in Cardoso's case and whether what appears from a docket sheet to be the imposition by the court of pretrial probation from March 18, 2010, until December 17, 2010, would preclude Cardoso from demonstrating the fourth element of his claim – a termination of the underlying proceeding in his favor. *See Kossler v. Crisanti*, 564 F.3d 181, 194 (3d Cir. 2009) (*en banc*). The abuse of process claim (Count XIII), on the other hand, will be dismissed at this stage of the proceedings. The tort of abuse of process describes a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money." *Keystone Freight Corp. v. Bartlett Consol., Inc.*, 77 Mass. App. Ct. 304, 313 (2010). It requires proof that "(1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Adams v. Whitman*, 62 Mass. App. Ct. 850, 853 (2005), quoting from *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 407 (2002). There is no allegation here that the "process" that issued against Cardoso did anything other than what it was properly intended to do, which was to bring the prosecution of the criminal charge against him into a court of law.

A conspiratorial agreement also by definition requires an undertaking among two or more persons. *See Kurker v. Hill*, 44 Mass. App. Ct., 184, 188 (1998). Nowhere in the pleadings is it plausibly alleged that Grayson in arresting Cardoso was acting in concert with any other named individual. Consequently, this Count will be dismissed.

The remaining claim (Count XV) alleges that Grayson "defam[ed], slander[ed] and libel[ed]" Cardoso. To prove defamation Cardoso must establish that "the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004). Here there is no allegation of an actual "statement" involving Cardoso's reputation that was published in any context other than the words used by Grayson to inform Cardoso that he was being placed under arrest.[11] Consequently, this Count will be dismissed as well.

## ORDER

For the foregoing reasons, all claims brought against the City of Brockton,

---

[11] To the extent the fact of the arrest itself might be construed as a "statement," it falls within the official act privilege. *See Barrows v. Wareham Fire Dist.*, 82 Mass. App. Ct. 623, 630-631 (2012).

the former Mayor, and the Chief of Police of the City of Brockton are BIFURCATED and STAYED. All claims against Christopher LaFrance are DISMISSED with prejudice. The court further dismisses the following Counts brought against Robert Grayson with prejudice: Counts II (as to claims brought under the First, Second, Fifth, Eighth, and Fourteenth Amendments to the Constitution), VI, VII, VII, IX, XIII, XIV, XV, and XVI. The section 1983 false arrest claim (Count II based on the Fourth Amendment) and the malicious prosecution claim (Count XII) will be set for trial before a jury.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE